**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH TRACY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:04CV1104CEJ/MLM** |
| | ) | |
| **DON ROPER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Joseph Tracy ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 13. Petitioner filed a Traverse to Respondents' Response. Doc. 17. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 8.

**I.**
**BACKGROUND**

Petitioner was charged by Indictment, dated September 18, 1997, as follows: Count I, the class A felony of murder in the first degree in that on June 21, 1997, Petitioner, after deliberation, knowingly killed David Kennedy by shooting him; Count II, the felony of armed criminal action in that on June 21, 1997, Petitioner committed the felony of murder in the first degree as charged in Count I by, with, and through the use, assistance, and aid of a deadly weapon; Count III, the class A felony of assault in the first degree in that on June 21, 1997, Petitioner caused serious physical injury to Steven Spink by shooting him; and Count IV, the felony of armed criminal action in that on

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

June 21, 1997, Petitioner committed the felony of assault first degree charged in Count III by, with, and through the use, assistance, and aid of a deadly weapon. Resp. Ex. B at 27-28.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

> On June 20, 1997, defendant learned that his ex-wife, Joyce, moved to Arizona with their eleven-year-old daughter and her new husband Patrick, who was also defendant's nephew. Defendant became extremely upset upon hearing the news. That afternoon, defendant met his wife, Nell, at a bar called Top of the Landing and went to Fritz's to meet up with two of their friends, Donna Politte and Dave Kennedy. Defendant was very angry when he arrived at Fritz's because he and Nell were having an argument. At Fritz's, defendant again drank heavily and continued to argue with Nell. Eventually, defendant and Nell left separately. Nell and Kennedy went to the Top of the Landing. Defendant arrived about one hour later. He asked Nell if she was ready to go home. She said yes, and as they were in the car and started taking off defendant got "physical" and "slammed the car over to the side" of the road. Defendant yelled "f**k you, Joyce, and then he grabbed me and he said he was tired of my shit, and I said, look at me, I'm Nell." Nell further testified that defendant said, "I'm so "f**king tired of both of you, and I said what are you talking about. He said I'm tired of you 'f**ing Patrick." Defendant then started choking Nell. As they struggled, defendant grabbed a gun that was in the car. The gun went off without hitting anyone. Nell stated that at this point she was laying half in and out of the car and defendant told her not to move because he was "going to take care of this." Defendant got out of the car and start[ed] walking towards the bar. Nell saw defendant leave and she quickly got back in the car and drove away. Once defendant was inside the bar he started "ranting and raving" and while pointing the gun at

---

[1]	In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)), cert. denied, 541 U.S. 996 (2004). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Kennedy defendant yelled at him to stay away from his "old lady." People stepped around defendant and repeatedly tried to calm him down and told him no one was "messing with Nell." Defendant pulled the gun and fired it. Steve Spink, the bouncer, was shot and seriously injured and Kennedy was fatally shot.

The police found defendant walking north on Broadway. Officer Joseph Reyes stated that defendant made statements to the fact that "[i]t shouldn't have happened. I don't know what I was thinking. It wasn't worth it."

Resp. Ex. E at 2-3.

The court notes that Sergeant Hornak also testified that he interviewed Petitioner at the homicide office and that after Petitioner was advised of, verbally acknowledged, and waived his rights Petitioner said that he shot both victims. Resp. Ex. A at 944-46.

Defense counsel argued that Petitioner thought he was shooting his nephew Patrick and that he did not intend to shoot Dave Kennedy. Resp. Ex. E at 3. The jury found Petitioner guilty of one count of voluntary manslaughter, one count of assault in the second degree, and two counts of armed criminal action. The trial court sentenced Petitioner to thirteen years in the custody of the Missouri Department of Corrections for voluntary manslaughter, five years for assault in the second degree, ten years for armed criminal action relating to the shooting of Kennedy, and five years for the armed criminal action as charged in Count IV. Petitioner's sentences are to be served consecutive to one another. Resp. Ex. B at 354-56.

On February 20, 2001, Petitioner filed a direct appeal. Resp. Ex. C. In his direct appeal Petitioner raised the following issues: (1) the trial court erred when it refused to allow Petitioner to present expert testimony from Dr. Michael Armour that Petitioner was unable to voluntarily waive his Miranda rights; (2) the trial court erred in allowing the State, over objection, to cross-examine defense witness Deacon Tracy about whether he had a reputation for faking injury when he was a police officer and whether he intentionally shot himself in order to receive disability; and (3) the trial

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

court erred in overruling defense objections to admitting evidence that Petitioner used a racial epithet. Resp. Ex. C at 16-18. By Order dated May 22, 2001, the Missouri appellate court affirmed the judgment of the trial court. Resp. Ex. E.

On November 13, 2001, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. F at 3-18. Counsel was appointed and filed an Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing pursuant to Missouri Supreme Court Rule 29.15. Resp. Ex. F at 22-33. On October 2, 2002, the motion court denied Petitioner the relief sought in his Rule 29.15 motion. Resp. Ex. F at 34. Petitioner filed an appeal of the motion court's denial of his Rule 29.15 motion in which appeal he sought relief on the following points: (1) Petitioner received ineffective assistance of counsel because trial counsel failed to correct the trial court's erroneous impression regarding the necessary length of Petitioner's sentence which would have to be served before Petitioner was eligible for parole, and (2) Petitioner received ineffective assistance of counsel because appellate counsel failed to raise on appeal that the trial court erroneously overruled Petitioner's objection to the prosecutor's mischaracterization of the evidence. Resp. Ex. G at 11-13. By Order dated November 26, 2003, the Missouri appellate court affirmed the motion court's denial of Petitioner's post-conviction relief motion and found Petitioner's claims without merit. Resp. Ex. I.

Petitioner filed his § 2254 Petition on August 19, 2004. Doc. 2. Petitioner raised the following grounds for relief in his § 2254 Petition:

**(1)** The trial court erred when it refused to allow Petitioner to present expert testimony from Dr. Armour that Petitioner was unable to voluntarily waive his Miranda rights;

**(2)** The trial court erred in allowing the State, over objection, to cross-examine defense witness Deacon Tracy about whether he had a reputation for faking injury when he was a police officer and whether he intentionally shot himself in order to receive disability;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**(3)** The trial court erred in overruling defense objections to admitting evidence of a conversation between Petitioner and his wife in which conversation Petitioner made a comment which may have been construed as a racial epithet because this evidence was prejudicial and because the comment falls within the marital privilege;

**(4)** Petitioner received ineffective assistance of counsel because trial counsel failed to correct the trial court's erroneous impression of the necessary length of Petitioner's sentence which would have to be served before Petitioner was eligible for parole; and

**(5)** Petitioner received ineffective assistance of counsel because appellate counsel failed to raise on appeal that the trial court erroneously overruled Petitioner's objection to the prosecutor's mischaracterization of the evidence.

Doc. 2.

## II.
## EXHAUSTION, DEFAULT, and TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murry v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 298 (1995)). A habeas petitioner who wishes to have a procedurally defaulted claim considered on its merits "'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 (citing

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

<u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." <u>Schlup</u>, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. In <u>Reed v. Ross</u>, 468 U.S. 1 (1984), "the Supreme Court recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." <u>McKinnon v. Lockhart,</u> 921 F.2d 830, 833 (8th Cir. 1990) (citing <u>Reed</u>, 468 U.S. at 16). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." <u>Id.</u> (citing <u>Leggins v. Lockhart</u>, 822 F.2d 764, 766 (8th Cir.1987).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. <u>Zinzer v. Iowa</u>, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of <u>Strickland v. Washington,</u> 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." <u>Id.</u> The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the <u>Strickland</u> prejudice." <u>Id.</u> at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the <u>Strickland</u> prejudice required to establish the underlying claim for ineffective assistance of counsel." <u>Id.</u> (citing <u>United</u>

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. Id. at 405.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982)). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." (citing Rose, 455 U.S. at 515-516; Darr, 339 U.S. at 204). The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Also, Section 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

The court finds that Petitioner's § 2254 Petition was timely filed. Additionally, Petitioner raised the claims of Grounds 1, 2, 4, and 5 in his State court appeal. The court finds, therefore, that Petitioner has not procedurally defaulted these grounds for relief and that he has exhausted his State remedies in this regard. In Ground 3, however, Petitioner alleges that admission of testimony by Donna Politte concerning a statement Petitioner made to his wife was improper because it violated the marital privilege and because it was inflammatory as it suggested he was racist. While Petitioner alleged before the Missouri appellate court that the trial court erred in admitting Ms. Politte's testimony that Petitioner used a racial epithet, Petitioner did not allege that this testimony was improperly admitted in violation of the marital privilege. The court finds, therefore, that Petitioner has procedurally defaulted that portion of Ground 3 in which he alleges that the trial court erred in admitting Ms. Politte's testimony in violation of the marital privilege. As Petitioner has not suggested

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

cause and/or prejudice to excuse his procedural default of this portion of Ground 3, the court finds that this portion of Ground 3 should be dismissed. Petitioner has not procedurally defaulted his claim in Ground 3 that the trial court erred in admitting Ms. Polite's testimony that Petitioner used a racial epithet.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme]Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1059 (2003). <u>See also</u> <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); <u>Boyd v. Minnesota</u>, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), <u>cert. denied</u>, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that it "is not to say that citation to

13

law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

(checked as of 5/27/05)

## IV.
## STANDARD APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

**V.**

**DISCUSSION**

**Ground 1 - the trial court erred when it refused to allow Petitioner to present expert testimony from Dr. Armour that Petitioner was unable to voluntarily waive his Miranda rights**:

As stated above, Petitioner confessed to police that he shot the victims. At Petitioner's trial officers testified as to the content of Petitioner's statements. Petitioner sought to have Dr. Armour testify regarding Petitioner's inability to intelligently make these statements to the police. In support of Ground 1 Petitioner states that before trial the defense endorsed Dr. Armour to testify whether Petitioner suffered from a diminished capacity from alcohol induced psychosis; that the State objected and filed a motion in limine; and that the court held a hearing in this regard. Petitioner further states that Dr. Armour testified at the hearing that he conducted three different tests on Petitioner; that he found Petitioner had a history of depression and alcoholism; that he diagnosed Petitioner with "major depression recurrent severe"; that Petitioner suffered from alcohol dependence, alcohol induced psychotic disorder with hallucinations with onset during intoxication; that Petitioner thought David Kennedy was his nephew Patrick; that Petitioner was experiencing delusional beliefs at the time of the shooting; that these conditions extended past the time of the shooting; that Petitioner was still experiencing some delusional beliefs at the police station, namely that he shot Patrick; and that while Petitioner knew he was in police custody, due to his delusions, Petitioner was not able to make an intelligent waiver and statement. Doc. 17. Petitioner contends that by denying Petitioner's request to present the testimony of Dr. Armour the court denied him the rights to present witnesses and evidence in his defense and to present his version of the facts and that he was prejudiced by not being allowed to present Dr. Armour's testimony. Doc. 17.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Upon addressing the issue of Ground 1 the Missouri appellate court considered that the State filed a motion in limine to exclude Dr. Armour's testimony and that the defense made an offer of proof through Dr. Armour. The Missouri appellate court noted that Petitioner argued that "if the jury had heard Dr. Armour's testimony, it would have found that [Petitioner] was not competent to waive his rights, and therefore, any statements made were not reliable evidence of his guilt." Resp. Ex. E at 3-4. The court then held as follows:

> The admission of expert testimony is within the sound discretion of the trial court State v. Blackman, 875 S.W.2d 122, 134 (Mo. App. 1994). We will not disturb a trial court's ruling on the admissibility of expert testimony unless there is a showing of clear abuse of discretion. Id. In Missouri, expert opinion testimony should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. State v. Taylor, 663 S.W.2d 235, 239 (Mo.banc 1984). Expert testimony should be excluded if it does not assist the jury, or if it unnecessarily diverts the attention of the jury from the question to be decided. Id.

Resp. Ex. E at 4.

The Missouri appellate court further considered that Dr. Armour testified that because of his intoxication and its effects and because of his depressive disorder, Petitioner was unable to make an intelligent waiver of his rights; that he did not have any information about the voluntariness of Petitioner's statement; and that in his opinion the statements were knowingly made because Petitioner knew he was in custody. Resp. Ex. E at 4-5. The Missouri appellate court then held:

> Defendant asserts that the trial court erred in excluding Dr. Armour's testimony because it showed that his waiver was neither voluntarily nor intelligently made due to his mental condition at the time he waived his Miranda rights. However, "a deficient mental condition, whether manifested by delusional behavior or a positive drug test, does not by itself render a statement unintelligent." State v. Bucklew, 973 S.W.2d 83, 90 (Mo. banc 1998). A defendant does not have the constitutional right to confess to a crime only when he is totally rational and properly motivated. Id.; Colorado v. Connelly, 479 U.S. 157, 166. "The requirement that a waiver be knowing and intelligent does not require that a defendant must know and understand all of the possible consequences of the waiver." State v. Mitchell, 2 S.W.3d 123, 126 (Mo. App. 1999).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As for voluntariness, it "depends on the absence of police overreaching, not on the mental ability of the defendant to make a 'choice.'" State v. Debler, 856 S.W.2d 461, 460 (Mo. banc 1993). Moreover, "[r]egardless of a defendant's physical or emotional condition, including his or her level of intoxication, a confession is not involuntary within the meaning of the due process clause of the Fourteenth Amendment absent coercive police activity." Mitchell, 2 S.W.3d at 126. Here, there is no evidence of police coercion; therefore defendant's argument for admitting Dr. Armour's testimony in regard to his confession being voluntary must also fail. The trial court did not abuse its discretion in the exclusion of Dr. Armour's testimony. Point denied.

Resp. Ex. E at 5-6.

Pursuant to Williams, the court will consider federal law applicable to the issue which Petitioner raises in Ground 1. The United States Supreme Court held in Estelle v. McGuire that "federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).

Indeed, questions concerning the admissibility of evidence are reviewable in federal habeas corpus proceedings only when the alleged error resulted in a trial so fundamentally unfair as to deny the petitioner due process of the law. Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004) (holding that federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights") (citing Estelle, 502 U.S. at 68), cert. denied, 125 S.Ct. 902 ( Jan. 10, 2005); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990). See also Sweet v. Delo,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process). Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)).

"There is no constitutional right for 'a criminal defendant to confess to his crime only when totally rational and properly motivated.'" Lyons v. Luebbers, 403 F.3d 585, 597 (8th Cir. 2005) (quoting Colorado v. Connelly, 479 U.S. 157, 166 (1986)). In Connelly, 479 U.S. at 16, the United States Supreme Court held that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." A "defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" Id. The mental condition of

a defendant when he or she makes a statement "might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, see, e.g., Fed. Rule Evid. 601, and not by the Due Process Clause of the Fourteenth Amendment." Id. at 167. The Court further held in Connelly that:

> There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); Miranda, supra, 384 U.S., at 460, 86 S.Ct., at 1620. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See Moran v. Burbine, 475 U.S., at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.

Id. at 169-170.

Moreover, the Eighth Circuit holds that error in admitting a confession may be harmless "'where the other evidence against [a defendant was] so weighty it assured beyond a reasonable doubt that the jury would have returned a conviction even absent the confession.'" Lyons, 403 F.3d at 597 (quoting United States v. Santos, 235 F.3d 1105, 1108 (8th Cir.2000)) (citing Mathenia v. Delo, 975 F.2d 444, 448 (8th Cir.1992) (holding that while a death-penalty habeas applicant's "graphic confession was destructive to his defense, it was far from the only evidence against him," and the district court correctly found "the defense was not prejudiced since the outcome would not have been different had the confession been suppressed"); United States v. Packer, 730 F.2d 1151, 1157 (8th Cir.1984) ("The admission of statements obtained in violation of Miranda may constitute harmless error when there remains overwhelming independent evidence as to the defendant's guilt."). In Lyons, 403 F.3d at 597-98, where the State habeas petitioner claimed that his confession was not intelligently

made because he suffered from a mental illness, the Eighth Circuit held that even if the State court erroneously found that the confession was not intelligently made, because the evidence of the habeas petitioner's guilt was overwhelming admission of the confession was harmless error beyond a reasonable doubt.

Pursuant to Williams, the court will also consider federal law applicable to the admission of expert opinion. Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993), the Supreme Court ruled that, in order for the trial judge to determine at the outset whether the expert is proposing to testify to scientific, technical, or other specialized knowledge that will assist the trier of fact, the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically, technically, or otherwise valid and whether that reasoning or methodology properly can be applied to the facts in issue. Although the facts in Daubert concerned primarily the issue of scientific testimony, the Supreme Court clearly intended Daubert's "gatekeeping" obligation, requiring an inquiry into both relevance and reliability, to apply not only to "scientific" testimony, but to all expert testimony. Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999).

The court finds that the decision of the trial court to grant the State's motion in limine in regard to the testimony of Dr. Armour is a matter of state law and, as such, is not cognizable pursuant to Petitioner's § 2254 Petition. See Estelle, 502 U.S. 67-68. Alternatively, the court notes that the Missouri appellate court's consideration of the circumstances under which expert testimony is admissible is not contrary to and is a reasonable application of the standard set forth in Daubert, if not identical to that standard. Moreover, the Missouri appellate court's determination that even if Petitioner was delusional at the time he confessed his confession was not necessarily involuntarily made. This holding is not contrary to and is a reasonable application of federal law including the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Supreme Court's holding in Connelly, 479 U.S. 166-68. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that the issue raised in Petitioner's Ground 1 is without merit and that it should, therefore, be dismissed.

Moreover, in Petitioner's case, considering the testimony at his trial as set forth above, the evidence that Petitioner shot the victims was overwhelming. Significantly, the jury found Petitioner guilty of voluntary manslaughter and not murder in the first degree. Also, Petitioner called as a witness Sam Parwatikar, M.D. This doctor testified that Petitioner suffered from a psychosis which manifested itself as the delusion that Dave Kennedy was Patrick and that Nell was Joyce. Resp. Ex. A at 1173. Dr. Parwatikar further testified that at the time of the shooting, Petitioner suffered from the mental diseases of psychosis and depression which resulted in his incapacity to appreciate the wrongfulness of his conduct. Resp. Ex. A at 1161. Under such circumstances, even if, arguendo, the trial court erred in not permitting Dr. Armour to testify, the trial court's ruling was harmless. See Lyons, 403 F.3d at 597. As such, Petitioner is not entitled to habeas relief on the basis of Ground 1and it should be dismissed.

**Ground 2 - the trial court erred in allowing the State, over objection, to cross-examine defense witness Deacon Tracy about whether he had a reputation for faking injury when he was a police officer and whether he intentionally shot himself in order to receive disability:**

Petitioner argues in support of Ground 2 that the court erred when permitting the prosecutor to ask Petitioner's brother, Deacon Tracy, on cross-examination, about his reputation for faking injury and whether he intentionally shot himself while a police officer because these questions were irrelevant, immaterial, and highly prejudicial. Petitioner further argues that these allegedly objectionable questions portrayed a critical witness on Petitioner's behalf as a cheat and a fraud and diverted the jury's attention away from facts at issue and prejudiced Petitioner. Petitioner also

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

contends that the prosecutor's allegedly objectionable questioning of Deacon Tracy was improper impeachment on a collateral matter not related to the charges Petitioner was facing. Doc. 17.

Upon addressing the issue of Ground 2 the Missouri appellate court noted that the trial court has discretion in admitting and excluding evidence and that the appellate court should not interfere with that such decisions absent a "clear showing of abuse of discretion." Resp. Ex. E at 6. The court further noted that decisions of the trial court regarding admissibility of evidence should only be reversed where the evidentiary decision is so prejudicial as to deprive a defendant of a fair trial. Resp. Ex. E at 6-7. The Missouri appellate court then considered the allegedly objectionable questioning and testimony and held as follows:

> On cross-examination, the prosecutor asked defendant's brother if he had ever faked an injury when he was a police officer. The prosecutor argued that this question went to the witness' credibility. The trial court allowed the question over defense counsel's objection, stating that the prosecutor can ask about the witnesses' reputation for truthfulness, including specific instances of untruthfulness. Defense counsel argued this line of questioning was irrelevant. We disagree.

> On cross-examination, Dan Tracy testified as follows:

> [Prosecutor]: Deacon Dan Tracy, ... do you have a reputation within the police department for feigning injury and illness?

> [Tracy]: No

> [Prosecutor]: In fact, sir, isn't it truthful that you faked an injury in order to get three-quarters retirement out of your 20 years?

> [Tracy]: Incorrect.

> [Prosecutor]: You shot yourself with a Derringer, an unauthorized weapon, and got three-quarters retirement rather than half?

> [Tracy]: Sir, that did have no relevance on my disability whatsoever. And I did not shoot myself. It was  - the gun was in a pocket in my jacket and it went off when it hit the floor when I dropped it.

> "When a witness takes the stand, he places his reputation for truthfulness and veracity in issue and the state may then offer evidence of his general reputation for

truthfulness and veracity." State v. Trimble, 638 S.W.2d 726, 735. (Mo. banc 1982). The credibility of witnesses is always a relevant issue in a lawsuit. State v. Smith, 996 S.W.2d 518, 521 (Mo. App. 1999). The witness was defendant's brother and once he testified on the stand he put his reputation for truthfulness on issue. His reputation for allegedly feigning injuries as a police officer goes to his truthfulness.

Defendant further contends that this questioning was improper because it concerned a collateral matter. The prosecutor, however, is permitted to ask questions on collateral matters; "i.e., facts which were of no material significance in the case or were not pertinent to the issues developed" but then is bound by the answers given upon cross-examination. State v. Garner, 799 S.W.2d 950, 957 (Mo. App. 1990). ... The general rule is that "impeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity" and "specific acts of misconduct, without proof of bias or relevance, are collateral, with no probative value." State v. Wolfe, 13 S.W.3d 248, 258 (Mo. banc 2000). On the issue of relevance, however, the trial court did not abuse its discretion in admitting evidence of [the] former police officer allegedly lying to his supervisors regarding a disability claim. A specific instance of lying to the police is directly relevant to a witnesses credibility. State v. Williams, 492 S.W.2d 1, 7 (Mo. App. 1973) ... The prosecutor's questions related directly to the witness' truthfulness and no extrinsic evidence was introduced to contradict the witness's testimony. We find no abuse of discretion.

Resp. Ex. E at 7-8.

First, the court finds that the issue raised in Petitioner's Ground 2 involves a question of Missouri law which is not a basis for federal court review under §2254. See Estelle, 502 U.S. 67-68. Moreover, under federal law "[i]t is proper impeachment to show that the general reputation of [a] witness as to truth and veracity is bad in the community in which he lives." Swafford v. United States, 25 F.2d 581, 584 (8th Cir. 1928). Additionally, "Federal Rule of Evidence 608(b) gives the court wide discretion to allow questioning during cross-examination on specific bad acts not resulting in the conviction of a felony if those acts concern the witness's credibility. However, in order to avoid holding 'mini-trials on peripherally related or irrelevant matters,' Rule 608(b) 'forbids the use of extrinsic evidence to prove that the specific bad acts occurred.'" United States v. LeCompte, 108 F.3d 948, 951 (8th Cir.1997) (quoting United States v. Martz, 964 F.2d 787, 789 (8th Cir.1997)). Also, under federal law a trial court has "substantial discretion regarding issues of relevance,

remoteness in time, and collateral impeachment." United States v. Edwards, 159 F.3d 1117, 1129 (8th Cir. 1998). It is proper under federal law "'for a cross-examiner to delve into matters which, although not mentioned on direct examination, bear on the witness's credibility.'" Revels v. Vincenz, 382 F.3d 870, 877 (8th Cir. 2004) (quoting United States v. Moore, 917 F.2d 215, 222 (6th Cir. 1993)). As such, assuming, arguendo, that the issue Petitioner raises in Ground 2 is cognizable pursuant to § 2254, the court finds that the decision of the Missouri appellate court in regard to this issue is not contrary to and is a reasonable application of federal law, if not identical to federal law. See Revels, 382 F.3d at 876; Edwards, 159 F.3d at 1129; Swafford, 25 F.2d at 584. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 3 - The trial court erred in overruling defense objections to admitting evidence of a conversation between Petitioner and his wife in which conversation Petitioner made a comment which may have been construed as a racial epithet:**

In support of Petitioner's Ground 3 Petitioner argues that his counsel filed a pre trial motion to preclude that State from introducing evidence that Petitioner used racial slurs during an argument with his wife, which motion was denied. Doc. 17.

Upon addressing the issue of Petitioner's Ground 3 the Missouri appellate court first noted that a trial court has broad discretion is admitting evidence and then considered the allegedly objectionable testimony of Donna Politte, who was the fiancé of Kennedy, regarding the argument between Petitioner and his wife, Nell. The testimony was as follows:

[Prosecutor]: And did you learn why he was upset?
[Politte]: Yes, they were arguing.

[Prosecutor]: And what were they arguing about?

[Defense Counsel]: Your honor, I would object to the relevance.
[Prosecutor]: Goes to the state of mind of defendant.

THE COURT:  Overruled.

[Prosecutor]: What were they arguing about?
[Polite]:  They were arguing over some raffle tickets that Nell wanted to sell.

[Prosecutor]: What kind of raffle tickets did Nell want to sell?
[Polite]:  I'm not exactly sure, they were for a fundraiser.
...

[Prosecutor]: And for whom was this fundraiser?
...

[Politte]: The tickets were for one of Mike Spink's family, one of his brothers, I'm not sure the exact  name.

[Prosecutor]: You mean the heavy weight boxer?
[Polite]: Yes.
...
[Polite]: They were arguing over her selling the tickets.  He told her there was no way that she was going to sell tickets for a MF-ing nigger.  That there was no way that she was going to do it.

"Evidence must be relevant to be admissible." State v. Shurn, 866 S.W.2d 447, 457 (Mo. banc 1993).  "Evidence is relevant if it logically tends to prove a fact in issue or corroborates relevant evidence which bears on the principal at issue. Id. Moreover, it is the trial court who is in the best position to determine the probativeness and prejudicial effect of the evidence.  State v. Evans, 992 S.W.2d 275, 287 (Mo. App. 1999).

However, a "conviction will not be reversed because of improper admission of testimony which is not prejudicial to defendant." State v. Neely, 979 S.W.2d 552, 563 (Mo. App. 1998) (quoting State v. Liesure, S.W.2d 875, 879 (Mo banc 1990)). We will only reverse due to an admission of improper evidence if the defendant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different. Evans, 992 S.W.2d at 291.

Here, the argument with Nell before the shooting was probative of defendant's state of mind.  Defendant claims that he suffered from a mental disease or defect at the time of the shooting.  Give that "[d]efendant injected the issue of his mental capacity" at trial then "evidence of Defendant's mental capacity or evidence offered to undermine Defendant's evidence of mental capacity was relevant." State v. Gregory, 913 S.W.2d 822, 828 (Mo. App. 1995).  Defendant's argument with his current wife a few hours prior to the shooting is relevant to show that defendant could still identify Nell as his present wife.  This evidence, then, is probative against defendant's claim that the was unable to recognize his own wife a few hours later during the altercation with her in the car.  Further, even though the racial slurs are

prejudicial towards defendant, he failed to prove that absent this evidence there was a reasonable probability that the verdict would have been different. We find that the admission of Politte's testimony was not an abuse of discretion. Point denied.

Resp. Ex. E at 9-11.

As stated above, admission of evidence is primarily a question of State law and, as such, does not give rise to a question reviewable pursuant to § 2254 unless the evidence resulted in trial error so fundamentally unfair as to deny a habeas petitioner due process. See Estelle, 502 U.S. at 67-68; Scott, 915 F.2d at 1090-91. The Missouri appellate court, however, determined that the allegedly objectionable testimony of Ms. Politte was probative of Petitioner's state of mind which Petitioner raised as a result of his contention that he was suffering from mental disease or defect at the time of the shooting. The Missouri appellate court further considered that Ms. Politte's testimony was also relevant to Petitioner's claim that he could not identify his current wife at the time of the shooting. Further, as noted by the Missouri appellate court, Petitioner does not establish that absent the allegedly objectionable testimony the verdict would have been different. Indeed, Petitioner confessed to the shootings and there was eyewitness testimony. The court finds, therefore, that under such circumstances the trial error which Petitioner alleges in Ground 3 did not result in a denial of due process. As such, the court finds that the issue raised in Petitioner's Ground 3 is not cognizable pursuant to § 2254 and that Ground 3 should be dismissed. See Estelle, 502 U.S. at 67-68.

Moreover, under federal law the erroneous admission of evidence may constitute harmless error when there is overwhelming independent evidence as to the defendant's guilt. Lyons, 403 F.3d at 597. The court notes, as described above, that Petitioner not only confessed to the shootings but the evidence against him was overwhelming. The court finds, therefore, in the alternative, that the decision of the Missouri appellate court in regard to the issue raised by Petitioner in Ground 3 is not contrary to federal law and is a reasonable application of federal law. See Lyons, 403 F.3d at 597.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 3 is without merit and that it should be dismissed.

**Ground 4 - Petitioner received ineffective assistance of counsel because trial counsel failed to correct the trial court's erroneous impression of the necessary length of Petitioner's sentence which would have to be served before Petitioner was eligible for parole**:

As stated above, the court ordered that Petitioner's sentences be served consecutive to one another. In support of Ground 4 Petitioner argues that at sentencing, Petitioner's counsel moved to have Petitioner's sentences run concurrent to one another; that the court rejected the request of counsel based on the allegedly erroneous belief that Petitioner would be paroled "closer to six years"; that counsel did not correct the court's misinterpretation; and that had counsel corrected the court there was a reasonable probability that the proceedings would have been different. Doc. 17.

Upon considering the issue raised by Petitioner in Ground 4 the Missouri appellate court first considered the standard set forth in Strickland as cited above. In particular, the Missouri appellate court noted that to establish ineffective assistance of counsel a defendant must establish both that counsel failed to exercise customary skill and diligence and that the defendant was prejudiced. Resp. Ex. I at 3. In order for a defendant to establish prejudice, the Missouri appellate court noted that it must be established that there is a reasonable probability that the result of the proceeding would have been different.

The Missouri appellate court then considered Petitioner's argument that his trial counsel failed to advocate effectively on his behalf at sentencing; that the trial court based its sentence on incorrect belief that Petitioner would be eligible for parole in six years; and that counsel was ineffective for failing to correct this belief. Resp. Ex. I at 3. The Missouri appellate court then considered that the trial court listened to the arguments of counsel at sentencing, sentenced Petitioner according to the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

jury's recommendation, and told Petitioner that he was sentenced to "essentially 33 years"; that he would have to serve six years before he would be eligible for parole; that whether Petitioner served "six or 20 or 33 [would] depend largely upon [Petitioner]"; and that the court's "guess" was that Petitioner would be paroled closer to six years than thirty-three. Resp. Ex. I at 4. The Missouri appellate court further stated that:

> Movant was convicted of two counts of armed criminal action. Under Section 571.-15.1, a person convicted of armed criminal action is not eligible for parole until he has served three years of his sentence. Because the motion court ordered Movant's sentences to run consecutively, he would have to serve three years on each armed criminal action count before becoming eligible for parole. Thus, he would have to serve a total of six years of his sentence before becoming eligible for parole. As the State correctly argues, dangerous felonies require a defendant to serve a certain percentage of sentence before becoming eligible for parole. Section 558.019.3, Section 556.061(8). However, voluntary manslaughter and assault in the second degree are not listed under the definition of dangerous felonies, and do not require that the defendant serve any part of the sentence before being eligible for parole. Similarly, a defendant is required to serve a certain amount of time before becoming eligible for parole where the defendant has already served time in prison on other crimes. Section 558.019.2. Nothing in the record shows that Movant was a prior offender, and Movant did not allege in his motion for postconviction relief that he had prior remands. Therefore, the motion court was correct in stating that Movant would be eligible for parole in six years.

> Moreover, the motion court did not base its sentence on parole eligibility, but rather made the comments by way of advising Movant to behave in prison. The motion court said, "I just want to say a couple of things," and told Movant that he was "sentenced essentially to 33 years," but that if he took advantage of his time in the penitentiary, he would be out much sooner, and that the trial court hoped he would do that. Nothing in the motion court's statements indicates the motion court based sentencing on parole eligibility. Rather, the motion court said that, "as I understand it," Movant could be out in as little as six years, but that would "depend largely upon" Movant.

> The record shows that the motion court intended to sentence Movant to thirty-three years of imprisonment, and was merely encouraging Movant to behave in prison by reminding him that he might be paroled earlier if he behaved. We find no error.

Resp. Ex. I at 4-5.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Upon concluding that Petitioner did not receive ineffective assistance of counsel because his counsel did not object to the trial court's interpretation of Missouri sentencing statutes, the Missouri appellate court considered that the trial court did not misconstrue Missouri law. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254. To the extent Petitioner challenges in Ground 4 the Missouri appellate court's interpretation of Missouri law, Petitioner does not assert a constitutional violation and his claim is not cognizable under § 2254.

As the Missouri appellate court found that the sentencing court did not misconstrue the law applicable to Petitioner's sentence, it impliedly found that Petitioner was not prejudiced by his counsel's actions. The court finds, therefore, to the extent that the issue raised in Petitioner's Ground 4 is cognizable pursuant to § 2254, that the decision of the Missouri appellate court in regard to the issue raised by Petitioner in Ground 4 is not contrary to federal law and is a reasonable application of federal law as set forth in Strickland. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that the issue raised in Petitioner's Ground 4 is without merit and that it should be dismissed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**Ground 5 - Petitioner received ineffective assistance of counsel because appellate counsel failed to raise on appeal that the trial court erroneously overruled Petitioner's objection to the prosecutor's mischaracterization of the evidence:**

In support of Ground 5 Petitioner argues that during closing argument the prosecutor mischaracterized the evidence when he stated that there was a long pause between the second and third shots and that had direct appeal counsel raised this argument there was a reasonably probability that the outcome of Petitioner's case would have been different. Doc. 17.

Prior to considering the merits of Petitioner's claim of ineffective assistance of appellate counsel, the Missouri appellate court considered the two pronged test of Strickland and held that this test is applicable to claims of ineffective assistance of appellate counsel. The court held that to establish ineffective assistance of appellate counsel a defendant must show "both breach of duty and resulting prejudice." Resp. Ex. I at 6. The court further noted that the claimed error of appellate counsel must be such that if asserted it would have required reversal. Resp. Ex. I at 6. The Missouri appellate court then considered that during closing argument the prosecutor stated: "What did she tell you? There was a long pause, I thought it was over. What does Steve tell you after he's shot? He runs back to the back and collapses in the back. And what do they both tell you about? The third shot in the bar. After a long pause." The court noted that trial counsel objected to this statement of the prosecutor on the grounds that it was a mischaracterization and that appellate counsel did not raise this claim on appeal.

The Missouri appellate court held, in regard to Petitioner's Ground 5, that:

> Here, the State's comments were drawn from the evidence. During the trial, several eye-witnesses testified about Movant's shooting of David Kennedy and Steve Spink. Several witnesses testified that some amount of time passed between the second and third shots. The States' characterization of the time that passed as a "long" pause was an inference drawn from the evidence. Middleton v. State, 103 S.W.3d 726, 742 (Mo. banc 2003) (prosecutor is permitted wide latitude in closing argument and may argue reasonable inferences from the evidence). As such, the trial court did not abuse its discretion in overruling Movant's objection to it. Had

appellate counsel raised this claim on direct appeal, it would not have required reversal. Further, because the argument was drawn from the evidence, a claim that the argument was improper was not so obvious from the record that any competent counsel should have raised it. Therefore, the record refutes Movant's claim that his appellate counsel was ineffective for not raising this issue on direct appeal.

Movant argues that he was prejudiced by the comment, because the state argued that the pause between the two shots showed deliberation, and the jurors were less likely to believe his mental defense if they thought he deliberated. However, the jury acquitted Movant of murder in the first degree, the only charge that required a finding of deliberation. "A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination or where the argument is plainly unwarranted." State v. Petty, 967 S.W.2d 127, 135 (Mo. App. E.D. 1998). The State's comments that Movant deliberated could not have a decisive effect on the jury's verdict when the jury concluded that Movant did not deliberate. Accordingly, there is no manifest injustice mandating reversal.

Resp. Ex. I at 6-7.

The Missouri appellate court determined that Petitioner's appellate counsel performed reasonably in not raising the issue of improper argument and that Petitioner was not prejudiced by the failure of appellate counsel to raise this argument because it had not merit. The court has set forth above the federal standard for determining whether a defendant received effective assistance of counsel. Additionally, in regard to appellate counsel's failure to raise certain issues on appeal, under federal law the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons v. Lockart, 915 F.2d 372, 275 (8th Cir. 1990)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Moreover, under federal law, to establish a violation of due process as a result of improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered the petitioner's entire trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

United States v. Conrad, 320 F.3d. 851, 854 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of ... closing arguments, "and this court will not reverse absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992).

The Missouri appellate court noted that Petitioner argued that he was prejudiced by the allegedly improper argument. The court held that a conviction is reversed for improper argument only where the argument had a decisive effect on the verdict and that in Petitioner's case the allegedly improper comment suggesting that Petitioner deliberated did not have a decisive effect because the jury concluded that Petitioner did not deliberate. As such, the decision of the Missouri appellate court in regard to what is required to reverse a verdict due to allegedly improper argument is not contrary to federal law and is a reasonable application of federal law. See Darden, 477 U.S. at 181; Donnelly, 416 U.S. at 646-47; Conrad, 320 F.3d. at 854; Crespo, 818 F.2d at 687. Additionally, the standard which the Missouri appellate court applied to its consideration of whether Petitioner received effective assistance of appellate counsel is not contrary to federal law and is a reasonable application of federal law as set forth in Strickland. The court further finds that upon considering the issue raised in Petitioner's Ground 5 the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 5 is without merit and that it should be dismissed.

## VI.
## CONCLUSION

The court finds that Petitioner procedurally defaulted the allegation in Ground 3 that testimony regarding a statement made to his wife violated the marital privilege. For the reasons stated above, the court finds that all other grounds for relief raised by Petitioner in his petition for habeas corpus relief are without merit. As such, Petitioner's § 2254 petition for habeas relief should

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [2]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 20th day of July, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com